UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIRAL DRM LLC, et al.,

Plaintiffs,

v.

DESIREE CORTES LACOMBA, et al.,

Defendants.

Case No. 24-cv-07108-WHO

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 39

Before me is plaintiffs' motion for default judgment, brought pursuant to Federal Rule of Civil Procedure 55(b), and filed June 10, 2026. Plaintiffs filed a complaint against defendants for copyright infringement and violation of the Digital Millennium Copyright Act (DMCA) based on their use of plaintiffs' videos.[1] Defendants failed to respond after being served with the summons and complaint. For the reasons set forth below, this motion is GRANTED in part and DENIED in part.

**BACKGROUND**

Plaintiffs are professional videographers of extreme weather events who hold registered copyrights in videos depicting such events. *See* First Amended Complaint ("FAC") [Dkt. No. 19] ¶¶ 13–20. Plaintiffs allege that defendants copied and downloaded their copyrighted works from YouTube, removed plaintiffs' copyright management information (CMI), and then reuploaded infringing versions to YouTube. *Id.* ¶¶ 33–34, 42–43. Plaintiffs further allege that defendants

[1] Plaintiffs are Viral DRM, Michael Brandon Clement, Ronald Brian Emfinger, Aaron Rigsby, Reed Timmer, and Noah Tomkinson. Clement owns Global Weather Productions (GWP), which manages and stores Clement's copyrighted works. Declaration of Michael Brandon Clement ("Clement Decl.") [Dkt. No. 39-2] ¶¶ 4–5. Defendants are Desiree Cortes Lacomba and Milenio Diario, SA de CV.

United States District Court
Northern District of California

United States District Court
Northern District of California

monetized the videos they copied, which caused plaintiffs to lose out on potential sales or licensing revenue and damaged plaintiffs' reputation. *See id.* ¶¶ 24, 41. Plaintiffs did not license the works at issue to defendants, nor did they otherwise authorize defendants' use. *Id.* ¶¶ 47, 49. Plaintiffs submitted takedown notices to take the infringing videos down; in response, defendants submitted counter notifications requesting to reinstate those videos. *See id.* ¶¶ 32, 51.

Plaintiffs filed this action, asserting claims for (1) copyright infringement under 17. U.S.C. § 501; (2) removal of CMI under DMCA section 1202(b); and (3) providing false CMI under DMCA section 1202(a). *See* FAC ¶¶ 52–72. After defendants failed to respond to the complaint, the clerk's office entered default against them. Dkt. No. 38. Plaintiffs now move for default judgment, seeking $1,225,000 in damages, $15,962.76 in attorneys' fees and costs, post-judgment interest, and injunctive relief. Motion for Default Judgment ("Mot.") [Dkt. No. 39].

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted). Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th

Cir. 1987). Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**DISCUSSION**

## I. Jurisdiction

In determining a motion for default judgment, the court must ensure that it properly has both subject matter jurisdiction over the case and personal jurisdiction over the defendant. *Tuli*, 172 F.3d at 712 ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). Plaintiffs have established subject matter jurisdiction under a federal question theory because this is a matter of copyright infringement under the Copyright Act, 17 U.S.C. § 501, and falsifying and removing CMI under sections 1202(a) and (b) of the DMCA.

Plaintiffs also argue that personal jurisdiction is appropriate under multiple theories. First, they assert that personal jurisdiction is appropriate under a theory of specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262, (2017). As the court stated in *Craigslist, Inc. v. Naturemarket, Inc.*,

> The Ninth Circuit has articulated a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction in the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.,* it must be reasonable.

694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010)

Plaintiffs also assert that defendants are subject to personal jurisdiction based on a consent theory. Specifically, they allege that defendants provided counternotifications to YouTube, which is found within this district. *See* FAC ¶ 8. "The subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of Federal District Court for the judicial district in which the address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found, and that the

subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person." 17 U.S.C. § 512(g)(3)(D). The counternotification submitted by defendants states: "I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant." FAC Ex. 3 at 3. As these counternotifications are directly related to the alleged infringement, this is sufficient to show active consent by the defendants. *See Moonbug Ent. Ltd. v. HappyKidsTV*, No. 22-CV-03203-TLT, 2022 WL 18859471, at *5 (N.D. Cal. Dec. 15, 2022) (finding personal jurisdiction over defendants who submitted copyright counternotices in which they consented to jurisdiction in the district where YouTube is located).

**II. Service of Process**

On November 5, 2024, plaintiffs moved for alternative service via email and publication on a website. Dkt. No. 13. On November 27, 2024, I denied this motion, noting that, despite Mexico being a signatory to the Hague Convention, "[a]t no point in its motion did Viral DRM describe any effort to serve defendants via Mexico's Central Authority, nor did it explain why utilizing such process would prove prejudicial." Order on Motion for Alternate Service [Dkt. No. 15]. Plaintiffs then attempted to serve defendants through Mexico's Central Authority for well over a year. They renewed their motion for alternative service on February 17, 2026. Renewed Motion for Alternative Service [Dkt. No. 28]. In the motion, plaintiffs detailed the difficulties they had encountered with Mexico's Central Authority. On March 30, 2026, I granted the renewed motion for alternative service, observing that plaintiffs had shown attempts to work through Mexico's Central Authority without success. Order on Renewed Motion for Alternative Service [Dkt. No. 31]. Defendants were then served via email and publication. *See* Dkt. No. 34. Thus, service is proper.

**III. *Eitel* Factors**

Plaintiffs argue that the *Eitel* factors generally weigh in favor of default judgment. I agree.

**A. Possibility of Prejudice to Plaintiffs, Possibility of Dispute With Regard to Material Facts, Excusable Neglect, and Policy Favoring Decision on the Merits**

Generally, when defendants "have not participated in the litigation at all, the first, fifth, sixth, and seventh factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. 19-CV-02109, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020). For the first factor, plaintiffs have shown that they will be prejudiced by failure to grant default judgment, as they will have no other "recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Regarding the fifth factor, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Accordingly, no genuine issue of material fact exists. The sixth factor also weighs in favor of default because defendants were properly served and have still not appeared. Their non-appearance cannot therefore be attributed to excusable neglect. Finally, while the seventh factor usually weighs against default, here a decision on the merits is "impractical, if not impossible," since defendants have not responded. *PepsiCo*, 238 F. Supp. 2d at 1177.

**B. Merits of Plaintiffs' Claims and Sufficiency of the Complaint**

Under the second and third *Eitel* factors, I must examine whether plaintiffs have pleaded facts sufficient to establish and succeed upon their claims. They have, so the second and third factors weigh in favor of entry of default judgment.

**1. Copyright Infringement**

Plaintiffs' first claim against defendants is for copyright infringement under the federal Copyright Act. To prevail on such a claim, a plaintiff must establish (1) ownership of a valid copyright; and (2) copying of protected elements of the copyrighted work. *Craigslist*, 694 F. Supp. 2d at 1055.

The complaint sufficiently states both components of this claim. First, plaintiffs allege that they own valid, registered copyrights in the videos. *See* FAC ¶¶ 44–45. Second, plaintiffs allege that defendants copied and distributed the videos without plaintiffs' permission. *See id.* ¶¶ 33, 42–43, 47, 55. Therefore, plaintiffs adequately pleaded a claim for copyright infringement.

### 2. DMCA Violations

Plaintiffs' second and third claims against defendants are for violations of the DMCA. Specifically, the complaint alleges that defendants violated sections 1202(b) and 1202(a).[2]

A plaintiff bringing a claim for CMI removal must demonstrate the intentional removal or alteration of CMI without authorization, and with knowledge or a reasonable basis to know, that such actions "will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b)(1). CMI may include the name of, and other identifying information about, the author and/or the copyright owner of the work. *Id.* § (c)(2)–(3). As for the mental state, the plaintiff "must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). The plaintiff "must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Id.* at 675. A claim of copyright infringement can provide such evidence for that inference. *See Batra v. PopSugar, Inc.*, No. 18-CV-03752-HSG, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019) ("[T]he plausible inference from Plaintiff's allegations is that [Defendant] removed the CMI from Plaintiff's Instagram posts knowing that removing the CMI would help to conceal the alleged infringement of Plaintiff's images.").

Plaintiffs' complaint alleges a violation of section 1202(b). Plaintiffs allege that defendants intentionally removed CMI consisting of watermarks identifying the works as plaintiffs' property and similar markings identifying and associating plaintiffs with their works. FAC ¶¶ 43, 60. Plaintiffs also plead the requisite mental state by (1) alleging that defendants removed CMI with knowledge or with reasonable grounds to know that their acts would induce, enable, facilitate, or conceal infringement of plaintiffs' rights; and (2) sufficiently pleading a claim for copyright infringement based on defendants' use of the videos, as discussed above. *Id.* ¶¶ 61–63.

[2] Plaintiffs do not explain whether they adequately pleaded DMCA violations in their brief, but they seek damages under the DMCA, so I examine the sufficiency of their allegations.

A claim under section 1202(a) requires a plaintiff to demonstrate that the defendant "knowingly and with the intent to induce, enable, facilitate, or conceal infringement," provided "[CMI] that is false." 17 U.S.C. § 1202(a). The complaint sufficiently establishes that defendants published false CMI and did so with the requisite intent. Plaintiffs allege that defendants' YouTube channel provided identifying information for defendants that falsely claimed ownership or rights in the works displayed there and that was provided to induce, enable, facilitate, or conceal infringement of plaintiffs' works. FAC ¶ 69. As discussed above, plaintiffs sufficiently pleaded copyright infringement and intentional removal of CMI, so it is reasonable to infer that defendants reuploaded the videos with false CMI to conceal the underlying infringement.

### C. Sum of the Money at Stake

The amount of money at stake is considered against the seriousness of defendants' conduct. *See Eitel*, 782 F.2d at 1471–72. Here, plaintiffs seek $1,225,000. Though that amount is substantial, damages of this magnitude have been deemed appropriate where a defendant has engaged in willful infringement and has refused to respond to the allegations brought against it. *Craigslist*, 694 F. Supp. 2d at 1060. Such is the case here: plaintiffs allege that defendants engaged in willful infringement, and defendants have refused to respond to the allegations brought against them. Accordingly, this factor favors entry of default judgment.

## IV. Remedies

Having determined that default judgment should be granted, I must evaluate plaintiffs' requests for relief, including the appropriate amount of damages to award.

### A. Actual Damages for Copyright Infringement

Under 17 U.S.C. § 504(a), a successful plaintiff in a copyright action may seek actual or statutory damages. Here, plaintiff GWP seeks actual damages for two of its works, in lieu of statutory damages. Mot. at 19–21. "[W]here the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay a willing seller for plaintiffs' work." *Jarvis v. K2 Inc.*, 482 F.3d 526, 533–34 (9th Cir. 2007) (cleaned up).

GWP requests $25,000 per work or $50,000 for the two works. Mot. at 20. This amount is

United States District Court
Northern District of California

based on Clement's statement that "[t]he typical range of fees [he] receive[s] for licensing the right to make use and display on the internet one of [his] copyrighted videos similar in quality and popularity to the Works is approximately $2,500 for a 30-day license" and the fact that defendants used the videos for at least two years. Clement Decl. ¶¶ 21, 23. Clement asserts that GWP would have charged $60,000 for a two-year license for each video but that GWP is "only requesting . . . $50,000 for the two works[.]" *Id.* ¶ 23.

GWP's purported license fee is purely speculative. "Although the burden to demonstrate a hypothetical lost licensee fee is not high," GWP has failed to provide information from which I can determine "what a willing buyer would have been reasonably required to pay." *Buschmann v. Malibu Times Collective, LLC*, No. 24-CV-09029, 2025 WL 4696368, at *3 (C.D. Cal. Apr. 21, 2025). GWP has not provided any supporting evidence for the claimed amount, such as evidence showing that he previously licensed the work for $2,500 for a 30-day license or $60,000 for a two-year license, or that this is a reasonable market value for licensing the work. *See Markos v. Sunstone Tours, Inc.*, No. 22-CV-06757, 2023 WL 6370619, at *3 (C.D. Cal. Mar. 12, 2023) (plaintiff's representation of how much he would have licensed the work to defendant for was speculative); *Live Face on Web, LLC v. AZ Metroway, Inc.*, No. 15-CV-01701, 2016 WL 4402796, at *5–6 (C.D. Cal. Aug. 15, 2016) (declining to award plaintiff's requested actual damages where amount claimed was not supported by the record).

Plaintiffs' assertion that the significant value of the works warrants $50,000 in actual damages is similarly unsupported. Mot. at 20. A bare assertion that the works are scarce and high-end, without any description of what makes the works so, is insufficient. *See Stockfood Am., Inc. v. Sequoia Wholesale Florist, Inc.*, No. 20-CV-03507-DMR, 2021 WL 4597080, at *5–6 (N.D. Cal. June 22, 2021), *report and recommendation adopted*, No. 20-CV-03507-JD, 2021 WL 4595128 (N.D. Cal. Oct. 6, 2021). Unlike the cases plaintiffs cites, though plaintiffs state that the filmed weather events cannot be obtained elsewhere, Clement Decl. ¶ 14, they provide no evidence or explanation showing why these particular works are unique, high-quality, or scarce. *See id.* Accordingly, the request for $50,000 in actual damages is DENIED.

**B. Statutory Damages for Copyright Infringement**

Instead of actual damages, a copyright plaintiff may elect to recover statutory damages of no less than $750 and no more than $30,000 for the infringement of a single work. 17 U.S.C. § 504(c)(1). If the infringement was willful, the court may exercise its discretion to award up to $150,000 in statutory damages. *Id.* § 504(c)(2). An award of statutory damages must bear a "plausible relationship" to a plaintiff's actual damages, though the statutory damages may exceed actual damages because in addition to being compensatory, they are intended to be punitive and deterrent. *Stockfood*, 2021 WL 4597080, at *6. The court has wide discretion in determining the amount of statutory damages to be awarded and is constrained only by the specified maxima and minima. *Id.* Moreover, although statutory damages are intended to serve as a deterrent, plaintiffs are not entitled to a windfall. *Glynn v. Cigar Store, Inc.*, No. 18-CV-00031-MMC, 2018 WL 3145683, at *5 (N.D. Cal. June 27, 2018).

In this case, plaintiffs seek an award of $75,000 per work,[3] enhanced due to the willful nature of defendants' infringement, or at least $30,000 in statutory damages. Mot. at 21. As an initial matter, plaintiffs have sufficiently alleged willful conduct by defendants. The complaint alleges that defendants republished plaintiffs' videos after removing or cropping out plaintiffs' watermarks and metadata, which is sufficient. *See Stross v. Z Lifestyle LLC*, No. 20-CV-00177, 2020 WL 13556135, at *2 (S.D. Cal. Nov. 5, 2020) (finding willfulness where complaint alleged intentional CMI removal prior to publication). "Willfulness may also be inferred or admitted based on a defendant's failure to defend." *Autodesk, Inc. v. Flores*, No. 10-CV-01917-LHK, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011).

The requested amount of $75,000 per work is based on an estimated licensing rate of $2,500 for a 30-day license, each work being used for at least 12 months, and a "3x multiplier" based on scarcity and quality factors. Mot. at 22. As discussed above, however, plaintiffs have not provided sufficient evidence justifying the license fee or the factors that the amount is based

[3] To recover statutory damages, the copyrighted work must have been registered prior to the commencement of the infringement, unless the registration is made within three months after the first publication of the work. *See* 17 U.S.C. § 412. Here, the works were registered within three months (except the two for which GWP seeks actual damages). *See* FAC Ex. 2.

United States District Court
Northern District of California

on. As with plaintiffs' claim for actual damages, none of the plaintiffs have provided evidence supporting a reasonable market value for the purported licensing fee or previous licenses for the works at issue, nor do any of the plaintiffs explain how the works are particularly unique or scarce as to justify the multiplier. Accordingly, the only question is whether and to what extent plaintiffs are entitled to an enhancement based on willfulness. In the court's wide discretion, I conclude that $15,000 in statutory damages per work is warranted here.

**C. Statutory Damages for DMCA Violations**

Plaintiffs GWP and Tomkinson assert that they are entitled to statutory damages under section 1203 of the DMCA because on seven of the works that they own, defendants removed copyright management information in violation of section 1202. Mot. at 23. Under the DMCA, the "complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B).

Here, plaintiffs seek the statutory maximum of $25,000 for each DMCA violation but provide no explanation for why that maximum is warranted here, nor do they cite to cases with similar circumstances in which the court has awarded that amount. However, plaintiffs did allege willful conduct on part of defendants. Under these circumstances, I find an award of $4,000 per violation appropriate. *See Buschmann*, 2025 WL 4696368, at *4 (awarding $5,000 where plaintiffs alleged willful conduct and continued infringement); *Glynn*, 2018 WL 3145683, at *5 (awarding $3,500 where defendant voluntarily ceased using the work).

**D. Attorneys' Fees and Costs**

Plaintiffs seek $13,460 in attorneys' fees and $2,502.76 in costs incurred in prosecuting this case. In a copyright infringement action, the court may allow the prevailing party to recover reasonable attorneys' fees. 17 U.S.C. § 505. When deciding whether attorneys' fees are warranted, the court may consider (1) frivolousness; (2) motivation; (3) objective unreasonableness both in the factual and legal components of the case; (4) and the need in particular circumstances to advance the dual goals of compensation and deterrence. *Stockfood*, 2021 WL 4597080, at *8. Courts calculate reasonable attorneys' fees using the lodestar method,

whereby the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate. *Id.*

The requested fees are based on 19.8 hours of work by attorney Matthew Laurence Rollin at rates of $400 or $450 per hour; 15 hours of work by paralegal Jamie James at a rate of $300 per hour; and one hour of work by legal assistant Juan Esteban Galindo at a rate of $200 per hour. Declaration of Matthew L. Rollin ("Rollin Decl.") [Dkt. No. 39-7] ¶ 7, Ex. 2. Courts in the Northern District of California have generally found that hourly rates ranging from $225 to $600 are reasonable in an intellectual property case.[4] *Stockfood*, 2021 WL 4597080, at *8. Rollin has been practicing law for five years, and his rate is reasonable for someone with his level of experience. *See Juno Therapeutics, Inc. v. Juno Biomedical, Inc.*, No. 17-CV-04196-JSC, 2018 WL 2021483, at *8–9 (N.D. Cal. Mar. 26, 2018) (awarding $500 per hour to a fifth-year associate), *report and recommendation adopted*, No. 17-CV-04196-HSG, 2018 WL 1993407 (N.D. Cal. Apr. 27, 2018). The rate of $300 for James is also reasonable, given her over eight years of experience. *See Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2020 WL 1972505, at *12 (N.D. Cal. Feb. 5, 2020) (explaining that in the Northern District of California, the hourly rate for paralegals ranges from $80 to $490 per hour, with higher rates being awarded based on experience). So is the rate for Galindo. *See Stockfood*, 2021 WL 4597080, at *8 (awarding $175 per hour to legal assistant and noting that reasonable hourly rates for paralegals and litigation support staff range from $150 to $240 in the Bay Area).

With respect to the number of hours billed, plaintiffs submitted a declaration summarizing the tasks completed and time spent by counsel and staff in this matter, as well as the underlying billing entries. The hours spent are reasonable, so I will award plaintiffs $13,460 in fees.

Plaintiffs also seek $2,502.76 in costs. The billing records reflect that plaintiffs paid the filing fee and fees associated with serving the complaint. Rollin Decl. ¶ 7, Ex. 2. These costs are reasonable, so I will award plaintiffs $2,502.76 in costs.

---

[4] Rollin represents that the rates are reasonable for the Los Angeles market, but generally, the relevant community for attorneys' fees awards is the forum in which the district court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

**E. Post-Judgment Interest**

Plaintiffs seek post-judgment interest pursuant to 28 U.S.C. § 1961. Under section 1961, "the award of post judgment interest on a district court judgment is mandatory," and shall be recoverable on all aspects of the judgment. *See Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). Accordingly, plaintiffs shall be awarded post-judgment interest, which "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

**F. Injunctive Relief**

Plaintiffs' complaint requests a permanent injunction against defendants barring them from infringing on plaintiffs' copyrights or committing DMCA violations with respect to the works at issue.[5] FAC at Prayer for Relief. Both the Copyright Act and the DMCA authorize courts to grant permanent injunctions on reasonable terms to prevent future violations. 17 U.S.C. §§ 502(a), 1203(b)(1). To obtain a permanent injunction, a plaintiff must show that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

All four factors are satisfied here. First, plaintiffs allege that they are prominent videographers with online followings and that defendants' conduct has not only caused them to lose out on revenue but also damaged their reputations and ability to negotiate. *See* FAC ¶¶ 14–24. Reputational harm and harm to their competitive positions may constitute irreparable injury. *See Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal. 2009).

Second, without a permanent injunction, defendants may continue their infringement.

[5] The injunctive relief plaintiffs seek in their motion covers *any* of plaintiffs' copyrighted videos and therefore deviates from their pleadings. *See* Mot. at 26; Dkt. No. 39-12 at 2–3. As plaintiffs have not shown that they are entitled to an injunction covering anything at all that they have copyrighted, the injunction is limited only to the works at issue. *Spyder Games LLC v. Thomas*, No. 26-CV-00933-TSH, 2026 WL 2138811, at *12 (N.D. Cal. July 10, 2026), *report and recommendation adopted*, No. 26-CV-00933-JST, 2026 WL 2175567 (N.D. Cal. July 28, 2026).

United States District Court
Northern District of California

Defendants' failure to appear and defend this action suggests that their "infringing activities will not cease absent judicial intervention." *Cobbler Nev. LLC v. Inglesias*, No. 15-CV-05313-EDL, 2016 WL 8453643, at *4 (N.D. Cal. Dec. 16, 2016), *report and recommendation adopted*, No. 15-CV-05313-CRB, 2017 WL 878039 (N.D. Cal. Mar. 6, 2017). Monetary damages are insufficient where plaintiffs would be forced to bring repeated lawsuits to recover for ongoing infringement. *See Michael Grecco Prods., Inc. v. 8 Decimal Cap. Mgmt., LLC*, No. 20-CV-07466-HSG-TSH, 2021 WL 2534567, at *6 (N.D. Cal. June 1, 2021), *report and recommendation adopted*, No. 20-CV-07466-HSG, 2021 WL 2531093 (N.D. Cal. June 21, 2021).

Third, defendants will not suffer a hardship from an injunction that prohibits them from engaging in conduct that they had no right to engage in. *See Strike 3 Holdings, LLC v. Andaya*, No. 21-CV-00760-VKD, 2021 WL 5123643, at *6 (N.D. Cal. Nov. 4, 2021) (noting that nothing in the proposed injunction would prohibit the defendant from *lawfully* accessing plaintiff's content), *report and recommendation adopted*, No. 21-CV-00760-LHK, 2021 WL 5908421 (N.D. Cal. Dec. 14, 2021).

Fourth, the public interest will not be disserved because "the public receives a benefit when the legitimate rights of copyright holders are vindicated." *Apple*, 673 F. Supp. 2d at 950.

Accordingly, a permanent injunction is appropriate here.

**CONCLUSION**

For the reasons set forth above, plaintiffs' motion is GRANTED in part and DENIED in part as follows:

1. To the extent plaintiffs seek a default judgment against defendants, the motion is GRANTED.
2. To the extent plaintiffs seek an award of actual damages, the motion is DENIED.
3. To the extent plaintiffs seek statutory damages under the Copyright Act, the motion is GRANTED, and plaintiffs shall have judgment against defendants in the amount of $195,000.
4. To the extent plaintiffs seek statutory damages under the DMCA, the motion is GRANTED, and plaintiffs shall have judgment against defendants in the amount of

$28,000.

5. To the extent plaintiffs seek attorneys' fees and costs in the amount of $15,962.76, the motion is GRANTED.

6. Post-judgment interest shall accrue from the date of judgment as provided by 28 U.S.C. § 1961(a).

7. Defendants and their officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, are permanently ENJOINED from infringing plaintiffs' exclusive rights in the works identified in Exhibit 1 to the Complaint under the Copyright Act, including reproducing, making derivative works based upon, distributing, or displaying those copyrighted videos.

**IT IS SO ORDERED.**

Dated: October 20, 2026



William H. Orrick
United States District Judge